So Ordered.

Dated: March 16, 2022



Beth E. Hanan
United States Bankruptcy Judge

UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF WISCONSIN

In re:

    Bertha Harris,                                         Case No. 21-26280-beh

                Debtor.                             Chapter 13

**DECISION AND ORDER ON DEUTSCHE BANK NATIONAL TRUST COMPANY'S OBJECTION TO PLAN CONFIRMATION**

The issue is whether 11 U.S.C. § 1322(c)(2) allows for bifurcation of an undersecured first mortgage on a Chapter 13 debtor's principal residence when the last payment on the original payment schedule was due shortly before the debtor filed her petition. For the reasons that follow, the Court concludes that it does.

**CASE BACKGROUND**

The facts of this case are undisputed. On November 20, 2006, debtor Bertha Harris purchased her principal residence located at 3065 N. 6th Street, Milwaukee, WI 53212. Claim No. 2-1, at 10. The debtor executed a note and first mortgage on behalf of J.P Morgan. *Id.* The note is currently held by Deutsche Bank National Trust Company ("Deutsche Bank") as Trustee on

behalf of J.P. Morgan. *Id.* at 31. After the debtor experienced financial hardship, on July 12, 2011, the parties agreed to modify the terms of the loan. *Id.* at 32. The modification agreement reduced the interest rate to 4.5% and provided for a final balloon payment due on or before December 1, 2021, in the amount of $88,778. *Id.* at 33–34.

The debtor failed to pay the outstanding balance upon maturation of the loan. Approximately two weeks after the balloon payment was due, on December 14, 2021, she filed her Chapter 13 petition. The current balance on the mortgage loan is $78,009.42. *Id.* at 3. The debtor's proposed Chapter 13 plan treats the portion of the mortgage that exceeds the value of the home separate from the remainder of the mortgage—or, in bankruptcy parlance, "bifurcates" Deutsche Bank's claim into secured and unsecured portions. ECF No. 2, at 4. The debtor values the allowed secured claim at $45,000 (her estimate of the current value of the home), and proposes to pay that amount over 60 months at an interest rate of 3.00%. *Id.* The remaining loan balance of $33,009.42 will be treated as unsecured and will receive no payment under the plan. *Id.* at 4–5.

On December 30, 2021, Deutsche Bank timely objected to the confirmation of the plan on three grounds. First, Deutsche Bank argued that the anti-modification provision of the Code, 11 U.S.C. § 1322(b)(2) (which allows a Chapter 13 plan to "modify the rights of holders of secured claims, other than a claim secured only by a security interest in real property that is the debtor's principal residence"), prevents the debtor from bifurcating its claim

into secured and unsecured portions. ECF No. 14, at 1. Second, Deutsche Bank objected to the 3% interest rate provided in the plan, and third, Deutsche Bank objected to the debtor's valuation of the claim.[1] After a preliminary hearing on the objection, the Court ordered additional briefing on whether § 1322(c)(2) allows for bifurcation of the claim here. ECF No. 22. In this decision, the Court will resolve only the first objection. The Court will set a subsequent evidentiary hearing to address the valuation question.

## ARGUMENTS OF THE PARTIES

The debtor contends that mortgages on a principal residence can be "crammed down" under 11 U.S.C. § 1322(c)(2), which permits a plan to "provide for the payment of the claim as modified pursuant to section 1325(a)(5)," when, as in this case, "the last payment on the original payment schedule . . . is due before the date on which the final payment under the plan is due." *See* ECF No. 26, at 1–2. The debtor reasons that § 1322(c)(2) allows her to invoke 11 U.S.C. § 1325(a)(5)(B)(ii) and consequently 11 U.S.C. § 506(a)(1) to bifurcate Deutsche Bank's claim and pay the present value of the allowed secured claim while treating the remainder of the debt as unsecured. *Id.* In support, the debtor cites *In re Tekavec*, 476 B.R. 555 (Bankr. E.D. Wis. 2012), and *Hurlburt v. Black*, 925 F.3d 154 (4th Cir. 2019), both of which hold that, under § 1322(c)(2), if the last payment on the principal residence mortgage is

---

[1] Deutsche Bank had argued that the reduced interest rate of 3.0% as provided in the plan fails to comply with the requirements of *Till v. SCS Credit Corp.*, 541 U.S. 465 (2004), and should be at least 4.5%. At the preliminary hearing on the bank's objection, counsel for Ms. Harris agreed that she would amend her plan to include an interest rate of 4.5%.

due before the end of the plan term, then the plan may bifurcate a home mortgage lender's claim into secured and unsecured components. ECF No. 26, at 2.

Deutsche Bank does not dispute that Harris's mortgage matured before the petition date. It contends, however, that § 1322(c)(2) does not grant the debtor the ability to bifurcate its claim. ECF No. 27, at 2–3. Deutsche Bank advances two arguments in support of that position. First, the bank reads the word "modif[y]" in § 1322(c)(2) to relate to "payment of the claim" rather than to the "claim." *Id.* at 3. To further support this reading, Deutsche Bank observes that the section of the Bankruptcy Reform Act of 1994 that gave passage to § 1322(c)(2) was entitled "Period for Curing Default Relating to Principal Residence." *Id.* at 2. Next, citing the dissent in *Hurlburt*, the bank points out that Congress passed § 1322(c)(2) shortly after the United States Supreme Court's decision in *Nobelman v. American Savings Bank*, 508 U.S. 324 (1993), which held that the "rights" protected by § 1322(b)(2) include "the right to repayment of the principal in monthly installments over a fixed term at specified adjustable rates of interest"—meaning that § 1322(b)(2) prohibits a debtor from changing both the *timing* and the *amount* of repayment in bankruptcy. *See Hurlburt*, 925 F.3d at 168 (Wilkinson, J., dissenting). Deutsche Bank maintains that, in § 1322(c)(2), Congress intended to create a very limited exception to *Nobelman* for short-term mortgages, by allowing modification of the *timing* of payments, but not the power to modify the claim itself. *Id.*

## ANALYSIS

The parties agree that 11 U.S.C. § 1322(c)(2) applies in the instant case because the mortgage matured before the petition date. The relevant section provides:

> (c) Notwithstanding subsection (b)(2) and applicable nonbankruptcy law—
> . . .
> (2) in a case in which the last payment on the original payment schedule for a claim secured only by a security interest in real property that is the debtor's principal residence is due before the date on which the final payment under the plan is due, the plan may provide for the payment of the claim as modified pursuant to section 1325(a)(5) of this title.

The parties ask the Court to resolve whether the phrase "payment of the claim as modified" in the text of § 1322(c)(2) permits modification of the "claim" or whether it merely permits modifying "payment of a claim."[2] If the text allows for modification of the "claim," as the debtor asserts, then modification of the allowed claim amount through bifurcation and cram down under § 1325(a)(5)(B)(ii) and § 506(a)(1) is permitted. In contrast, if Deutsche Bank's construction of the statute is correct, the debtor may modify *only* the payment schedule outlined in the note. In that case, the debtor would have to pay the

---

[2] At the preliminary hearing on its objection, counsel for Deutsche Bank briefly referred to *In re Smith*, No. 14-20281 (Bankr. E.D. Wis. June 23, 2014), apparently to support its view that section 1322(c)(2) permits adjustment to only the timing of payments. But the *Smith* court expressly left open the question presented here: "This order only resolves whether §1322(c)(2) allows the Smiths to pay U.S. Bank's claim through the plan by distributing funds equal to the amount of its claim plus interest at a rate other than the note rate. This decision does not address whether the Smiths can provide for U.S. Bank's claim in their plan by only paying the allowed amount of U.S. Bank's secured claim as defined by 11 U.S.C. § 506(a) . . . ." Case No. 14-20281, ECF No. 35, n.2.

outstanding balance in total during the term of her Chapter 13 plan before receiving the property free and clear of Deutsche Bank's lien.

Looking at the plain language of § 1322(c)(2), the Court is not persuaded by Deutsche Bank's reading that modification relates to "payment of a claim." The structure of the text supports the debtor's argument that "as modified" refers to "the claim." Such a reading comports with the grammatical rule of the last antecedent, i.e., that a phrase should modify its immediate antecedent. Here, the phrase "as modified" should be read as modifying the word "claim," which is its immediate antecedent. *See Am. Gen. Fin., Inc. v. Paschen* (*In re Paschen*), 296 F.3d 1203, 1208 (11th Cir. 2002) (rejecting an argument that "as modified" relates to "payment of the claim" rather than to the "claim" as a "grammatically strained reading of the statute"); *cf. Nobelman*, 508 U.S. at 330–31 (while interpreting a statute in accordance with the rule of the last antecedent may be "sensible as a matter of grammar," such an interpretation "is not compelled," and the rule may give way to a more reasonable interpretation—e.g., when the statutory language involves a term of art).

Deutsche Bank next cites *Nobelman* and the dissent in *Hurlburt* to argue that the congressional intent of § 1322(c)(2) was to allow modification to only the timing of payments. These authorities do not convince the Court, for two reasons. First, as discussed above, the structure of the text supports a plain reading that unambiguously allows debtors to bifurcate their principal residence loans if the last payment on the original payment schedule is due before the final payment under the plan. As one court observed, "[w]here the

plain meaning of a statute is not ambiguous, and the application of the plain meaning does not lead to an 'absurd result,' a court is bound by that interpretation." *Sensient Techs. Corp. v. Baiocchi* (*In re Baiocchi*), 389 B.R. 828, 830 (Bankr. E.D. Wis. 2008) (citing *Clark v. Chicago Mun. Credit Union* (*In re Clark*), 119 F.3d 540, 546 (7th Cir. 1997)). *See also Ill. Marine Towing, Inc. v. Barnick* (*In re Barnick*), 353 B.R. 233, 237 (Bankr. C.D. Ill. 2006) (explaining that only if a term is ambiguous should a court look beyond the statutory language to determine Congress's intent).

Second, the Court is not persuaded by Deutsche Bank's logic that the phrase "as modified" must qualify "payment of claims" because any other reading would conflict with *Nobelman*, which Congress did not intend to overturn in enacting § 1322(c)(2). True, the House Committee Report makes no mention of *Nobelman*, despite referring to 40 other cases. *See Hurlburt*, 925 F.3d at 164, addressing the "silence" of legislative history. But the enactment of § 1322(c)(2) merely narrowed, or created a carve-out from, the the types of mortgages that are protected from modification by § 1322(b)(2), the subsection *Nobelman* interprets. *See First Union Mortg. Corp. v. Eubanks* (*In re Eubanks*), 219 B.R. 468, 477 (B.A.P. 6th Cir. 1998) (reasoning that "*Nobelman* deals with the meaning of the words in § 1322(b)(2); § 1322(c)(2) defines a narrow class of claims to which those words do not apply"). *See also In re Mattson*, 210 B.R. 157, 160 (Bankr. D. Minn. 1997) (agreeing with commentator that "[b]ecause new section 1322(c)(2) is preceded by the words 'notwithstanding subsection (b)(2) and applicable nonbankruptcy law,' Chapter 13's no modification clause

as read in *Nobelman* would not apply") (citation omitted). Thus, interpreting § 1322(c)(2) to allow for modification of "claims" does not conflict with *Nobelman.*

Similarly unconvincing is Deutsche Bank's assertion that the title of the section of the Bankruptcy Reform Act of 1994 that created § 1322(c)(2)—"Period for Curing Default Relating to Principal Residence"—reflects a legislative intent to allow only for modification to the timing of payments. Statutory titles will not limit the plain meaning of a subsection's text. *F.T.C. v. Mandel Brothers, Inc.*, 359 U.S. 385, 388–89 (1959).[3] And nothing prevents Congress from adding a narrow exception for short-term and balloon mortgages to the general rule of § 1322(b)(2) that principal residence mortgages cannot be modified. *See In re Eubanks*, 219 B.R. at 470 (Section 1322(c)(2) creates an "exception to the exception" for a subset of secured real property). *See also 8 Collier on Bankruptcy* P 1322.17 (16th ed. 2021) (Congress believed that debtors with such mortgages needed additional protection because short-term

---

[3] Another bankruptcy court addressed this same interpretive argument:
> [T]he language used in a statute's heading or title should not be relied upon to conclusively establish the meaning of the statute. *See Brotherhood of R.R. Trainmen v. Baltimore & O.R. Co.*, 331 U.S. 519, 528-29, 67 S. Ct. 1387, 91 L.Ed. 1646 (1947). . . . As the United States Supreme Court explained,
>> [Headings and titles are not meant to take the place of the detailed provisions of the [statutory] text. Nor are they necessarily designed to be a reference guide or a synopsis. Whether the text is complicated or prolific, headings and titles can do no more than indicate the provisions in a most general manner …. For interpretive purposes, [headings and titles] are of use only when they shed light on some ambiguous word or phrase. They are but tools available for the resolution of a doubt. But they cannot undo or limit that which the text makes plain."
> *Brotherhood v. Baltimore*, 331 U.S. at 528-29, 67 S.Ct. 1387.

*In re Bushey*, 559 B.R. 766,773 (Bankr. D. N.M. 2016).

and balloon payment mortgages often have high rates or terms that are particularly unfavorable).

In sum, this Court joins the other courts which have held that a plain reading of § 1322(c)(2) authorizes modification of a principal residence loan through bifurcation, when the last payment on the original payment schedule is due before the final plan payment is due. *See Hurlburt*, 925 F.3d at 154 ("[W]e now *align our circuit with every other court* that has considered this issue to hold that the plain text of 11 U.S.C. § 1322(c)(2) authorizes modification of such claims, not just the payment schedule for such claims, including through bifurcation and cram down.") (emphasis added). *See also In re Tekavec*, 476 B.R. at 557 (holding that if the condition of § 1322(c)(2) is satisfied, then the plan may provide for bifurcation of the Bank's claim into secured and unsecured components); *In re Schroeder*, 607 B.R. 329, 334 (Bankr. E.D. Wis. 2019) (same, relying on *Tekavec* and *Hurlburt*). Because the debtor meets the condition of § 1322(c)(2), as her last payment on the original payment schedule was due before the final payment under her plan, she may bifurcate Deutsche Bank's claim into secured and unsecured components in her proposed Chapter 13 plan.

## CONCLUSION/ORDER

For the above reasons, it is HEREBY ORDERED that Deutsche Bank's objection is OVERRULED IN PART.

It is FURTHER ORDERED that the Court will hold a subsequent hearing on the remaining basis of Deutsche Bank's objection to plan confirmation on

**April 12, 2022 at 9:00 AM** (for purposes of scheduling an evidentiary hearing on valuation). To appear by telephone, the parties must call the Court conference line at 1-888-808-6929 and enter access code 9122579 before the scheduled hearing time.

#####